| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. | ) | |
| NOLDON WADLEY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 06 C 258 |
| v. | ) | |
| | ) | Judge George W. Lindberg |
| DONALD HULICK, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Noldon Wadley, a prisoner in custody of the Illinois Department of Corrections, has filed a petition for federal habeas relief. For the reasons stated below, the petition is denied.

**I.       Factual and Procedural Background**

The following facts are drawn from the opinions of the Illinois Appellate Court, People v. Wadley, 523 N.E.2d 1249 (Ill. App. Ct. 1988), and No. 1-00-1462 (Ill. App. Ct. Dec. 19, 2003), which the Court presumes are correct for the purpose of habeas review. See 28 U.S.C § 2254(e)(1).

On May 16, 1984, Cynthia Berrian was murdered in an alley near 47th and Langley Streets in Chicago. Wadley, 523 N.E.2d at 1251. One witness observed petitioner follow Berrian as she approached the alley, and immediately thereafter heard gunshots. Id. Another witness observed petitioner shoot Berrian. Id. at 1252. Both witnesses identified petitioner in lineups. Id. Petitioner admitted to police that he shot Berrian because "Gangster Larry" Crittendon, the head of his gang, threatened to shoot him if he did not do so. Id. Berrian had been scheduled to testify against one of petitioner's fellow gang members in a double murder trial, approximately two

weeks after Berrian's murder.  Id. at 1253.

Judge Thomas Maloney presided over petitioner's jury trial.  The jury convicted petitioner of murder, and he was sentenced to life imprisonment.  Wadley, 523 N.E.2d at 1251, 1253.  Maloney was later convicted of conspiracy, racketeering, extortion, and obstructing justice, for taking bribes to fix other cases.  See United States v. Maloney, 71 F.3d 645 (7th Cir. 1995).

Petitioner filed a direct appeal, in which he raised the following issues:

(1)    Whether he was denied a fair trial by the denial of his motion for substitution of judge;

(2)    Whether he was denied his right to confrontation by the admission of hearsay evidence regarding his gang membership;

(3)    Whether the court's decision to allow the prosecution to question petitioner about his sale of drugs denied him a fair trial;

(4)    Whether he was denied a fair trial by the prosecution's cross-examination of him regarding prior bad acts; and

(5)    Whether he was denied a fair trial because the court *sua sponte* gave an oral instruction to the jury.

The Illinois Appellate Court affirmed petitioner's conviction on May 10, 1988.  The Illinois Supreme Court denied petitioner's petition for leave to appeal on October 6, 1988.

Petitioner filed a petition for post-conviction relief on April 6, 1993, raising the following issues:

(1)    Whether petitioner was denied a fair trial by the trial court's admission of gang evidence;

(2)    Whether petitioner's due process rights were violated by the trial court's jury instruction;

(3)     Ineffective assistance of trial counsel; and

(4)     Whether the trial court erred in sentencing him to natural life in prison.

After the petition languished in a dormant file repository of the Cook County Circuit Clerk's Office for more than four years, petitioner filed a supplemental petition for post-conviction relief on January 13, 1998, raising the following issues:

(1)     Whether his Fifth, Sixth, and Fourteenth Amendment rights were violated when petitioner was compelled to participate in a pretrial lineup without counsel;

(2)     Whether his due process rights were violated by police coercion of his confession through threats, intimidation, and physical abuse, and denial of his requests for counsel;

(3)     Whether he was denied his right to a trial before an impartial judge because he was tried by a corrupt judge;

(4)     Whether the state court's delay in ruling on his post-conviction petition violated his due process rights; and

(5)     Ineffective assistance of trial counsel.

The trial court dismissed both petitions on March 22, 2000.  On December 19, 2003, the Illinois Appellate Court reversed the trial court's dismissal of the post-conviction petitions, and remanded for further proceedings.  The petitions remain pending in the trial court.

Petitioner filed his petition for habeas corpus in this Court on January 17, 2006, and subsequently filed two amended petitions through appointed counsel.  This Court excused petitioner's failure to exhaust state court remedies, on the basis of the inordinate and unjustifiable delay in the state court post-conviction proceedings, which the Court found was attributable to the State.  See Docket Entry Nos. 23 & 45 (April 7, 2006 & Aug. 25, 2006 Orders).

In his second amended habeas petition, petitioner claims that he was denied his due

process and equal protection rights because:

    (1)    The State failed to provide petitioner with complete trial transcripts;

    (2)    The trial court improperly admitted petitioner's statements during the trial;

    (3)    Petitioner was tried on a defective indictment;

    (4)    His trial and sentencing hearing did not take place before an impartial tribunal;

    (5)    The trial court admitted unreliable and irrelevant evidence; and

    (6)    The trial court improperly instructed the jury.

In addition, petitioner claims that he was denied his right to effective assistance of trial and appellate counsel (Claim VII). Finally, Petitioner claims that all of these violations cumulatively violated his due process and equal protection rights (Claim VIII). Petitioner requests that this Court hold an evidentiary hearing on his claims.

## II.    Analysis

### A.    Legal Standard

Under Section 2254, only claims that the petitioner is being held in state custody in violation of federal constitutional or statutory violations are appropriately raised in habeas petitions. 28 U.S.C. § 2254(a). In addition, a federal court cannot address the merits of a habeas petitioner's constitutional claims unless he raised them in the state court proceedings; claims that have not been raised in the state proceedings are procedurally defaulted. Farrell v. Lane, 939 F.2d 409, 410 (7th Cir. 1991).

The parties dispute the extent to which the deferential standard prescribed by Section 2254(d) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), applies to any claims this Court reviews on the merits. Section 2254(d) only applies to

a "claim that was adjudicated on the merits in State court proceedings" because, as a practical matter, in those circumstances there is no state court decision to which to defer. 28 U.S.C. § 2254(d); Canaan v. McBride, 395 F.3d 376, 382-83 (7th Cir. 2005) (internal quotes omitted). The requirement that a claim be adjudicated on the merits by a state court "is not an entitlement to a well-articulated or even a correct decision by a state court," however. Muth v. Frank, 412 F.3d 808, 815 (7th Cir. 2005). Indeed, several circuits have held that a state court need not offer any reasons, and that even a summary disposition constitutes an adjudication on the merits. See id. (collecting cases).

The Court finds that petitioner's fifth and sixth claims were adjudicated on the merits by the state court, and that the AEDPA standard applies to the extent that the Court reaches the merits of those claims. As respondent concedes, there has been no state adjudication on the merits of petitioner's remaining claims. Therefore, the AEDPA standard does not apply to any merits review of those claims.

Under Section 2254(d), a court may not grant relief unless the state court's adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). If Section 2254(d) does not apply, the Court must "dispose of the matter as law and justice require," under the general standard prescribed by 28 U.S.C. § 2243. Braun v. Powell, 227 F.3d 908, 916-17 (7th Cir. 2000).

**B.      Claim I – Missing Trial Transcripts**

Petitioner first claims that his constitutional rights were violated because he has not been

provided with complete transcripts of the trial proceedings. At some point between the conclusion of petitioner's direct appeal and 2005, the first 724 pages of the transcript of petitioner's trial were lost, apparently by the Circuit Court Clerk's Office. The trial judge testified in his deposition that he does not remember petitioner's trial, and the parties have been unable to reconstruct the record through other means.

The unavailability of a portion of the trial transcript does not automatically entitle petitioner to habeas relief. The decision regarding whether a transcript is necessary is within this Court's discretion. See Simental v. Matriciano, 363 F.3d 607, 612 (7th Cir. 2004) (citing Rule 5 of the Rules Governing Section 2254 Cases). As the Seventh Circuit has observed, the review of a state court transcript in a habeas case, although occasionally necessary, "is certainly not required and is, in fact, quite rare." Id. The parties have not cited any Supreme Court or Seventh Circuit authority applicable to this precise situation. However, in similar cases, other courts have placed the burden on the habeas petitioner to show prejudice resulting from the missing transcript, and has required the petitioner "to present something more than gross speculation." See, e.g., Scott v. Elo, 302 F.3d 598, 604-05 (6th Cir. 2002) (quoting Bransford v. Brown, 806 F.2d 83, 86 (6th Cir. 1986)).

The partial loss of the trial transcript is certainly unfortunate, and the Court appreciates the difficulty petitioner faces in showing prejudice under these circumstances. However, petitioner must do more than offer speculation that the missing portion of the transcript may reveal error. The state appellate court had access to the complete transcript in preparing its opinion, as did petitioner in his briefing before the appellate court. The appellate court's recitation of the facts is consistent with petitioner's own detailed recitation in his briefing, and

petitioner has offered nothing showing that these recitations were inaccurate. In addition, there has been no suggestion that either the prosecution or respondent was responsible in any way for the loss. Neither side has had access to the missing portion of the transcript during this proceeding. Petitioner has not established that he has been prejudiced as a result of the missing portion of the transcript. The petition is denied as to Claim I.

### C. Claim II – Petitioner's Statements Admitted at Trial

In his second claim, petitioner contends that his constitutional rights were violated because the trial court improperly admitted petitioner's statements at trial. Petitioner argued in his supplemental post-conviction petition that his confession was coerced; he did not make any claim regarding his confession in his direct appeal.

The Court finds that this claim is procedurally defaulted, because petitioner failed to raise it on direct appeal. Under Illinois law, "the scope of post-conviction review is limited to issues which have not been, and could not have been, previously adjudicated." People v. Moore, 686 N.E.2d 587, 591 (Ill. 1997) (quoting People v. Owens, 544 N.E.2d 276 (Ill. 1984)). Thus, "[f]ailure to raise a claim which could have been addressed on direct appeal is a procedural default which results in a bar to consideration of the claim's merits in a post-conviction proceeding." People v. Erickson, 641 N.E.2d 455, 458 (Ill. 1994). As the state appellate court observed in petitioner's direct appeal, petitioner did not "question the propriety of the admission [of his statement]." Wadley, 523 N.E.2d at 1252. Since petitioner could have raised this issue on direct appeal, but did not do so, it is procedurally defaulted.

A habeas petitioner can overcome a procedural default by showing cause for the default and prejudice resulting from it, or by showing that the denial of relief would result in a

miscarriage of justice.  <u>Lewis v. Sternes</u>, 390 F.3d 1019, 1026 (7th Cir. 2004).  A petitioner

establishes cause if he shows that some external factor prevented him from presenting his federal

claim to the state courts.  <u>Id.</u>  Prejudice exists where "the violation of the petitioner's federal

rights 'worked to his *actual* and substantial disadvantage, infecting his entire trial with error of

constitutional dimensions.'"  <u>Id.</u> (quoting <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982)).  A

petitioner can overcome procedural default based on a miscarriage of justice "in an extraordinary

case, where a constitutional violation has probably resulted in the conviction of one who is

actually innocent[.]"  <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986).

 Petitioner does not offer any reason why he failed to raise his claim regarding his

confession on direct appeal.  Nor could he cite ineffective assistance of appellate counsel as

cause for failing to raise this issue on direct appeal.  "[T]he assertion of ineffective assistance as

a cause to excuse a procedural default in a § 2254 petition is, itself, a constitutional claim that

must have been raised before the state court or be procedurally defaulted."  <u>Lee v. Davis</u>, 328

F.3d 896, 901 (7th Cir. 2003) (citing <u>Edwards v. Carpenter</u>, 529 U.S. 446, 453 (2000)).  Petitioner

did not raise the issue of ineffective assistance of appellate counsel in the state court proceedings,

and therefore his ineffective assistance of appellate counsel claim is also procedurally defaulted.

 Moreover, the Court finds that petitioner has not shown that a miscarriage of justice

occurred here, as there is overwhelming evidence of petitioner's guilt even without his

confession.  Petitioner's own recitation of facts submitted to the state appellate court on direct

appeal reflects that the following facts were adduced at trial.  Eleven-year-old Clarence Lanier

testified that he observed petitioner follow the victim into an alley and shoot her; Lanier later

identified petitioner in a lineup.  Pauline Peake testified that she observed petitioner follow the

victim into an alley, with his right hand inside his coat, and that immediately thereafter, Peake heard three gunshots. Peake went into the alley and discovered the victim lying on the ground. Peake identified petitioner in a photographic array and in a lineup.

In addition, as petitioner's appellate brief relates, a Cadillacs street gang member testified that on the date of the murder, petitioner told him that he was going to kill someone, and that several days later petitioner told him that the police were looking for him. The appellate court quotes this witness as testifying that petitioner said that "[t]he police are on my ass for a murder I did of a bitch who was trying to be a witness." Wadley, 523 N.E.2d at 1252-53. Another gang member testified that after the murder, petitioner told him that the police were looking for him because he shot a girl who was going to testify against one of his "folks" and that "Gangster Larry" had wanted it done. The appellate court decision quoted this witness as testifying that the day after the murder, he asked petitioner if he had heard about the girl who was killed, and petitioner responded: "The police are looking for me because I shot her because she was going to testify against one of my folks named 'Chico' who was going to testify soon." Wadley, 523 N.E.2d at 1253. Both of these witnesses testified that they believed that petitioner was a member of the Disciples gang.

An Assistant State's Attorney testified that the victim was a prosecution witness in a case against Disciples gang member Marshall McNeil. The appellate court opinion noted that the victim had been scheduled to testify against McNeil at his trial on June 4, 1984, approximately two weeks after she was murdered. Wadley, 523 N.E.2d at 1253.

Given all of this evidence, petitioner has not shown that the alleged constitutional violation "probably resulted in the conviction of one who is actually innocent." The habeas

petitioner is denied as to Claim II.

## D.  Claim III – Defective Indictment

Petitioner next claims that his constitutional rights were violated because his indictment

did not charge that he was potentially eligible for the death penalty based on the aggravating

factors of contract murder or murder of a witness, pursuant to Apprendi v. New Jersey, 530 U.S.

466 (2000).[1]  Petitioner raised this issue in his post-conviction petition.  On appeal of the

dismissal of petitioner's post-conviction petitions, the Illinois Appellate Court declined to

consider the issue, on the basis that Apprendi does not apply retroactively to cases in which the

direct appeal process had concluded at the time Apprendi was decided.  Wadley, No. 1-00-1462,

at 10.

Petitioner's reliance on Apprendi is misplaced.  Apprendi provides that an aggravating

element must be presented to the jury and proved beyond a reasonable doubt.  Apprendi, 530

U.S. at 490.  However, the question of whether an aggravating factor must also be charged in a

state indictment was not raised in Apprendi.  Id. at 477 n.3.  Indeed, the Apprendi Court

observed:

> the Fourteenth Amendment "has not . . . been construed to include the Fifth
> Amendment right to 'presentment or indictment of a Grand Jury' that was
> implicated in our recent decision in Almendarez-Torres v. United States.  We thus
> do not address the indictment question separately today.

Id. (internal citation omitted).  Since Apprendi, the Supreme Court has distinguished between

---

[1]  The Court notes that petitioner does not contend that the aggravating factor of murder
of a witness was not presented to the jury, or that the jury did not make a finding regarding this
aggravating element.  Nor could he: when the jury convicted petitioner of murder, it specifically
found that he committed the murder with intent to prevent the victim from testifying in a criminal
prosecution.  See Wadley, 523 N.E.2d at 1251.

federal and state prosecutions, and has only held that aggravating elements must be charged in the indictment in federal prosecutions.  See United States v. Cotton, 535 U.S. 625, 627 (2002). The Court finds that the aggravating factor of murder of a witness was not required to be charged in the state indictment.  See Williams v. Haviland, 467 F.3d 527, 533-34 (6th Cir. 2006); People v. Thurow, 786 N.E.2d 1019, 1027 (Ill. 2003).

In addition, Apprendi does not apply here because petitioner's sentence became final after the date of that case's release.  "*Apprendi* is not retroactive and thus 'does not disturb sentences that became final before June 26, 2000, the date of its release.'" Dellinger v. Bowen, 301 F.3d 758, 765 (7th Cir. 2002) (quoting Curtis v. United States, 294 F.3d 841, 844 (7th Cir. 2002)). Petitioner's conviction became final ninety days after October 6, 1988, the date the Illinois Supreme Court denied his petition for leave to appeal in his direct appeal.  See Stewart v. Lane, 60 F.3d 296, 300 (7th Cir. 1995) (for the purpose of retroactivity analysis, a state conviction and sentence become final when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for writ of certiorari has elapsed or a timely petition has been finally denied); U.S. Sup. Ct. R. 13(1).  The petition is denied as to petitioner's third claim.

### E.  Claim IV – Right to Trial and Sentencing Before Impartial Tribunal

In his fourth claim, petitioner alleges that he was denied his right to a fair trial and sentencing hearing before an impartial tribunal, because the presiding judge, Thomas Maloney, fixed murder cases during the same time period as petitioner's trial.  Petitioner raised this issue in his supplemental post-conviction petition, which remains pending in the state court.

Maloney was convicted of conspiracy, racketeering, extortion, and obstructing justice in

1993, for taking bribes to fix cases during the 1980s. See United States v. Maloney, 71 F.3d 645 (7th Cir. 1995). Although Maloney did not take a bribe in petitioner's case, petitioner argues that Maloney took adverse actions against petitioner in his trial in an effort to appear tough and draw attention away from the cases in which he did accept bribes.

Due process requires a "fair trial in a fair tribunal, before a judge with no actual bias against the defendant or interest in the outcome of his particular case." Bracy v. Gramley, 520 U.S. 899, 904-05 (1997) (internal citation omitted). The fact that a judge accepted bribes in some cases is not enough, by itself, to establish bias in other cases. Cartalino v. Washington, 122 F.3d 8, 10 (7th Cir. 1997). As both the Supreme Court and the Seventh Circuit Court of Appeals have recognized, the usual presumption that public officials have properly discharged their duties does not apply to Maloney, who was indisputably "thoroughly steeped in corruption." Gramley, 520 U.S. at 909, Bracy v. Schomig, 286 F.3d 406, 409-10 (7th Cir. 2002). However, petitioner bears the "heavy burden of showing actual bias" in his own case to prove compensatory bias. Schomig, 286 F.3d at 411. Harmless error analysis does not apply to a claim of judicial bias. Id. at 414.

The Court notes that it is exceedingly difficult to determine whether Maloney was biased in petitioner's case, without access to the entire record. However, as noted above, petitioner bears the burden of showing prejudice from the missing transcript, as well as the burden of showing that Maloney was actually biased in petitioner's own case. After careful consideration, the Court concludes that petitioner has not met this challenging burden.

First, petitioner's efforts to directly ascertain Maloney's motives in petitioner's case were

unsuccessful. The parties in this proceeding deposed Maloney on March 10, 2008.[2] Maloney

testified in his deposition that he did not recall anything about petitioner's trial. Maloney also

maintained that he never took a bribe in any case over which he presided as a judge, a ludicrous

claim given the clear evidence to the contrary that formed the basis of his conviction.

Accordingly, petitioner must rely on circumstantial evidence to show that Maloney was biased in

his case.

According to petitioner, Maloney showed bias by:  issuing a *sua sponte* instruction to the

jury; objecting on behalf of the prosecutor; making discretionary rulings regarding the

admissibility of petitioner's confession, gang evidence, and other crimes evidence; giving

prosecutors latitude in cross-examining petitioner; and questioning a prosecution witness

himself.

### 1.      *Sua sponte* **jury instruction**

After he read the written jury instructions, Maloney stated:

> Now, there is one additional matter that the Court will instruct you on and that is
> the names of other people were mentioned during the trial of this case and you
> may consider them criminally responsible in this case.  But you are instructed that
> no persons other than the defendant are concerned.  You are not to expand your
> deliberations to include any other persons.

Petitioner argues that this statement prevented the jury from considering his theory that someone

else committed the murder, and is evidence of Maloney's compensatory bias.  In addressing

petitioner's argument that this statement was an improper oral jury instruction, the Illinois

Appellate Court held that it was merely an evidentiary ruling, and that petitioner did not suffer

---

[2]  Maloney died on October 20, 2008.  See Trevor Jensen, *Thomas J. Maloney 1925-2008: Judge was convicted of rigging cases*, CHI. TRIB., October 22, 2008, § 1, at 43.

any prejudice from it.  Wadley, 523 N.E.2d at 1258.

The Court has reviewed the jury instructions given in petitioner's trial, which are included in the available record.  Among other things, the jury was instructed as to petitioner's presumption of innocence, the prosecution's burden of proving him guilty beyond a reasonable doubt, and that the jury is the sole judge of the believability of the witnesses and the weight to be given to their testimony.  The jury was also instructed as to the elements of the charged offense.  Based on the totality of the instructions given, the Court finds that Maloney's statement did not prejudice petitioner, and does not show Maloney's bias.

### 2.      Objection on behalf of the prosecutor

Petitioner claims that Maloney displayed bias by "objecting on behalf of the prosecutor." This claim appears to be based on the following exchange during petitioner's sentencing hearing:[3]

| Defense counsel: | Q: | How long have you lived with Nick [petitioner]? |
| | A: | About two years. |
| | Q: | As long as you have known him has he always been a living [sic] and beautiful family man? |
| | A: | Yes. |
| Maloney: | | It's not – the State doesn't seem to know they are supposed to object.  They are supposed to object to the form of your question.  One can't always be something.  So we try to adhere to form here. |

The Court finds that this inconsequential exchange does not support a finding that Maloney was biased against petitioner.

---

[3]  The transcript of this exchange is contained in the record before this Court.

### 3.       Admission of petitioner's statements

Petitioner contends that Maloney displayed bias by improperly admitting petitioner's statements at trial.  The transcript of the suppression hearing is part of the record that has been lost, and thus is unavailable for the Court to review.  However, the Court finds that the fact that petitioner and his counsel did not deem the issue of Maloney's ruling on petitioner's motion to suppress worthy of appeal is some evidence that the statement was properly admitted.  The Court concludes that petitioner has not shown that Maloney erred in admitting his confession, or that his admission of the confession was evidence of bias.

### 4.       Gang evidence

Petitioner also contends that Maloney's admission of gang evidence is evidence of Maloney's compensatory bias.  At petitioner's trial, Maloney permitted prosecution witnesses to testify that petitioner was a member of the Disciples gang, which operated in the area where the murder occurred.  In addition, a prosecutor with the gang crimes unit testified generally as to the names and territories of the major gangs in Chicago, and testified regarding the double murder investigation of Marshall McNeil, an investigation in which that prosecutor participated.  The state appellate court concluded that the gang evidence was relevant, and that the prosecutor's testimony was based on his personal knowledge and observations.  Wadley, 523 N.E.2d at 1254-55.

This Court agrees with the state appellate court that evidence relating to petitioner's gang membership was relevant, given the evidence that petitioner committed the murder in order to prevent the victim from testifying against McNeil.  In addition, petitioner offers no evidence that calls into question the appellate court's conclusion that the gang crimes prosecutor testified based

on his personal knowledge and observations. Because Maloney properly admitted this evidence, this action does not show bias.

### 5. Other crimes evidence

Petitioner contends that Maloney showed bias by improperly admitting other crimes evidence. Although petitioner does not specifically identify the evidence to which he refers, he appears to be referring to Maloney's decision to permit the prosecution to introduce rebuttal evidence that petitioner was previously arrested in a stolen car; and that petitioner once asked police for leniency for a cousin who had been arrested for pickpocketing, because petitioner had told her to commit the crime.

During his trial, petitioner testified that he did not know two of Larry Crittendon's family members. Maloney allowed the prosecution to impeach this testimony by asking petitioner whether he remembered being arrested with those individuals on those two occasions. Maloney also allowed the prosecution to admit rebuttal evidence concerning the circumstances of the arrests. The state appellate court held that it was proper to allow the cross-examination, but that the admission of the rebuttal evidence was improper. Wadley, 523 N.E.2d at 1257. Ultimately, the appellate court concluded that this error was harmless. Id.

The Court has reviewed the testimony at issue, which is in the record, and agrees with the state appellate court that Maloney properly allowed the prosecution to impeach petitioner's testimony by asking him whether he remembered being arrested with Crittendon's family members. The Court further agrees that Maloney should not have admitted the rebuttal evidence. However, the Court finds that the rebuttal evidence admitted was not prejudicial, and that its admission does not show that Maloney was biased.

16

## 6.        Latitude in cross-examining petitioner

In a ruling on petitioner's motion in limine, Maloney precluded the prosecution from introducing into evidence petitioner's statements about his use or sale of drugs. <u>Wadley</u>, 523 N.E.2d at 1255. However, following petitioner's direct examination, Maloney reconsidered this ruling, and allowed the prosecution to cross-examine petitioner regarding his drug activities. <u>Id.</u> at 1255-56. Petitioner contends that Maloney's second ruling evidences Maloney's bias.

As related by the state appellate court,[4] petitioner testified on direct examination that he knew and recognized "Gangster Larry" Crittendon because petitioner hung out on the corner of 47th and Langley Streets four or five days a week, between 11:00 a.m. and 10:00 p.m. <u>Id.</u> at 1255. He testified that on the day of the murder, he was standing on the corner, and saw a woman arguing with Crittendon and another man. <u>Id.</u> He testified that he saw the second man follow the woman into the vacant lot, and then heard gunshots when petitioner approached the lot. <u>Id.</u> The appellate court's version of these events is consistent with the version presented in petitioner's appellate brief.

Maloney found that the facts relating to petitioner's drug activities were "inextricably intertwined" with the events surrounding the shooting, and that petitioner was trying, through his testimony, to create a different impression for the trial than what he had told the police. <u>Id.</u> at 1256. Accordingly, Maloney allowed the prosecution to cross-examine petitioner about his drug activities. <u>Id.</u> at 1255-56. On cross-examination,[5] petitioner testified that he used to sell drugs on the corner of 47th and Langley, that he obtained the drugs from Gangster Larry, and that he

---

[4] The transcript of petitioner's direct examination is part of the record that has been lost.

[5] This portion of petitioner's cross-examination is included in the record.

17

had told the police that at the time of the shooting petitioner was going through the vacant lot to get into the alley where his drugs were stored.

This Court agrees with the appellate court that Maloney properly admitted the evidence of petitioner's drug activities. Evidence of other crimes is admissible if it "constitutes a continuing narrative of the circumstances attending the entire transaction." People v. Evans, 869 N.E.2d 920, 931 (Ill. App. Ct. 2007) (quoting People v. Carter, 841 N.E.2d 1052, 1059 (Ill. App. Ct. 2005)). For example, such evidence may be admissible if it "is intertwined with the charged offense." Id. Here, petitioner's direct testimony left unanswered the questions of why he was on the corner of 47th and Langley, how he knew Gangster Larry, and why he entered the vacant lot. Evidence relating to petitioner's drug activity thus was admissible, because it was a part of the continuing narrative of the circumstances of the entire event.

In addition, Maloney initially excluded this evidence, and only later admitted it after petitioner testified. Moreover, at the close of the trial, Maloney instructed the jury that evidence that petitioner had been involved in other offenses could only be considered on the issue of petitioner's identification, presence, motive, and knowledge. The Court finds that Maloney's admission of this evidence did not show that Maloney was biased against petitioner.

### 7. Questions addressed by Maloney to prosecution witness

Petitioner contends that Maloney showed bias by questioning a prosecution rebuttal witness. In the prosecution's rebuttal case, Detective Catherine Reardon testified that petitioner was placed in an interview room at the police station, where an Assistant State's Attorney and Detective Reardon's partner, Detective Michael Pochardo, interviewed him. Detective Reardon testified that the interview rooms were along the west wall of a room that had several desks with

18

typewriters, and that during the time about which she testified, she was in the center area at a typewriter.  Following this testimony, Maloney asked Detective Reardon the following questions:[6]

Q:      In this room where you say there are typewriters and desks.  How many desks and typewriters?

A:      There is [sic] four desks that are right next to each other.  They are right touching each other and there is [sic] probably about four different typewriters at those desks.

Q:      Four interview rooms?

A:      They are maybe about 20 feet from the rooms.

Q:      Are they occupied throughout your shift?

A:      Whoever needs to use the typewriter comes and uses it.

Q:      Are there people in this room where the typewriters and desks are?

A:      It's not –

Q:      Police officers?

A:      It's a big open area.

Q:      I know that.  I mean is it empty or are there people there usually?

A:      Usually there is [sic] a couple of people in and out during the day.

THE COURT:            Okay.

Petitioner contends that through these questions, Maloney intended to undermine petitioner's claim that he was beaten by Detective Pochardo.

A trial judge has the discretion to "question witnesses in order to elicit the truth or clarify material issues which seem obscure," as long as he remains fair and impartial, and does not give

---

[6]  The transcript of this exchange is included in the record before this Court.

the jury an impression of his feelings or opinions. People v. Brown, 558 N.E.2d 309, 315 (Ill. App. Ct. 1990). The Court finds that petitioner has not shown that Maloney was biased, merely by asking these questions about the layout of the police station.

The Court concludes that petitioner has not met his burden of establishing that Maloney's actions either individually or collectively show that Maloney was biased against petitioner in petitioner's own case. Cf., e.g., Cartalino, 122 F.3d at 10 (remanding for further proceedings where there was evidence that petitioner's co-defendant had bribed the trial judge, and that the judge had agreed to have petitioner "take the fall"); People v. Hawkins, 690 N.E.2d 999, 1004, 1009 (Ill. 1998) (granting new trial in case where Maloney initially accepted a bribe, but returned the money when he suspected (correctly) that the FBI was watching him). The habeas petition is denied as to Claim IV.

**F.      Claim V – Admission of Unreliable and Irrelevant Evidence**

In his fifth claim, petitioner alleges that the trial court improperly admitted gang-related evidence; improperly allowed the prosecution to cross-examine him regarding his drug activities; and improperly allowed the prosecution to present rebuttal testimony regarding petitioner's prior convictions. Respondent argues that this claim is not cognizable on federal habeas review because it does not allege a federal constitutional violation.

A state court evidentiary ruling is not cognizable in a habeas corpus proceeding unless it "was so prejudicial that it violated [the petitioner's] due process right to a fundamentally fair trial, creating the likelihood that an innocent person was convicted." Dressler v. McCaughtry, 238 F.3d 908, 914 (7th Cir. 2001). As discussed above, the trial court properly admitted evidence relating to petitioner's gang membership and drug activities. In addition, although the trial court

should not have admitted rebuttal testimony regarding petitioner's prior convictions, this evidence was not prejudicial. Moreover, given the substantial other evidence of petitioner's guilt, petitioner has not shown that these evidentiary rulings were so prejudicial as to create the likelihood that an innocent person was convicted. The Court concludes that these rulings are not cognizable in this habeas proceeding. The habeas petition is denied as to Claim V.

### G. Claim VI – *Sua Sponte* Jury Instruction

In his sixth claim, petitioner contends that his constitutional rights were violated because the trial court *sua sponte* issued an improper jury instruction. As described supra in Part II.E.1, after the trial court read the written instructions to the jury, he made an oral statement that "you are instructed that no persons other than the defendant are concerned." Respondent argues that this claim is procedurally defaulted, because he failed to present it to the state courts as a federal constitutional claim.

"To avoid procedural default, a habeas petitioner must have presented fully and fairly his federal claims to the state courts before he may obtain federal review of those same claims." Chambers v. McCaughtry, 264 F.3d 732, 737 (7th Cir. 2001). This means that the petitioner must have placed the "controlling legal principles" before the state courts. Id. Factors relevant to this analysis include whether the petitioner: (1) relied on federal cases that apply a constitutional analysis; (2) relied on state cases which apply a constitutional analysis to similar facts; (3) framed his claim "in terms so particular as to call to mind a specific constitutional right;" or (4) alleged "a pattern of facts that is well within the mainstream of constitutional litigation." Ellsworth v. Levenhagen, 248 F.3d 634, 639 (7th Cir. 2001).

In his brief filed in the appellate court, petitioner argued that the trial court's oral

statement to the jury violated Illinois law requiring that jury instructions be in writing.  See Ill. Sup. Ct. R. 451(c); 735 ILCS 5/2-1107(a).  Petitioner also argued that the trial court's oral statement violated his right to have his theory of the case put before the jury, and denied him a fair trial.  The appellate court rejected petitioner's first argument on the basis that the trial court's statement was merely an evidentiary ruling in the form of an admonishment, and was not an "instruction" requiring written form.  Wadley, 523 N.E.2d at 1258.  The court also concluded that petitioner did not suffer any prejudice from the trial court's oral statement.  Id.

In his petition for leave to appeal to the Illinois Supreme Court, petitioner argued that the appellate court's decision ignored the trial court's violation of the state rule requiring written jury instructions, and that the appellate court erred in concluding that petitioner suffered no prejudice as a result of the trial court's oral statement.  The Illinois Supreme Court summarily denied petitioner's petition for leave to appeal.

The Court concludes that petitioner did not fairly present his federal constitutional claim to the state courts.  Petitioner's primary argument in his state court briefing – that the trial court erred in giving an oral jury instruction -- was based on state law.  Petitioner did not mention due process or the federal constitution, or cite any federal cases.  None of the state cases petitioner cited applied a constitutional analysis.  Although petitioner argued in his state court briefs that the trial court's oral statement to the jury denied him a fair trial, this was not enough to alert the state courts that he was raising a federal due process claim.  See Perruquet v. Briley, 390 F.3d 505, 520 n.3 (7th Cir. 2004) (observing that habeas petitioner's citation of state cases that mentioned a defendant's right to a fair trial did not alert state court to petitioner's due process claim, since the cases did not mention due process or rely on federal cases).  Since petitioner did

not fairly present his sixth claim to the state courts, it is procedurally defaulted.

Nor has petitioner established cause and prejudice that would excuse the procedural default. Petitioner has not offered any reason why he did not present his federal claim to the state courts. In his reply brief, petitioner states that "Respondent ignores that this issue has now also been raised as an ineffective assistance of counsel claim." However, at no time prior to this passing mention – either in the state court proceedings or here – has petitioner made any claim of ineffective assistance of counsel based on any failure by counsel relating to the trial court's oral statement to the jury. Nor does petitioner argue that ineffective assistance of counsel caused the procedural default as to this issue. Petitioner has not shown that Maloney's statement to the jury infected his entire trial with error of constitutional dimensions, or resulted in a miscarriage of justice. The petition is denied as to Claim VI.

### H.    Claim VII – Ineffective Assistance of Counsel

In Count VII, petitioner claims that trial counsel was ineffective because counsel:

(1)    did not object to the indictment's failure to specify the aggravating factor that was the basis for seeking the death penalty;

(2)    failed to notify petitioner at his arraignment that the case had been assigned to Maloney, which prevented petitioner from requesting that counsel file a motion for substitution of judge;

(3)    did not investigate and introduce evidence at trial that another person committed the crime, despite having information to that effect;

(4)    failed to object to holding a death penalty hearing, when petitioner's conviction carried only a potential sentence of twenty to forty years in prison; and

(5)    failed to make a proper inquiry of the jurors after a newspaper containing articles on petitioner's case was brought into the jury room.

The Court finds that petitioner's ineffective assistance of trial counsel claim is

procedurally defaulted.  Petitioner could have raised this issue on direct appeal, but failed to do so, despite having been represented by a different attorney on appeal.  Moreover, petitioner has not raised his first, third, and fifth bases for his ineffective assistance of trial counsel claim in any state proceeding.  See Stevens v. McBride, 489 F.3d 883, 894 (7th Cir. 2007), cert. denied, 128 S. Ct. 2423, 128 S. Ct. 2429 (2008) (failure to raise one aspect of ineffective assistance results in procedural default).

Petitioner contends that the ineffective assistance of trial counsel claim was not raised on direct appeal because his appellate counsel was also ineffective.  However, as the Court noted in its analysis of petitioner's second claim, "the assertion of ineffective assistance as a cause to excuse a procedural default in a § 2254 petition is, itself, a constitutional claim that must have been raised before the state court or be procedurally defaulted."  See supra Part II.C (quoting Lee, 328 F.3d at 901).  Petitioner did not raise a claim of ineffective assistance of appellate counsel in the post-conviction proceedings.

Petitioner argues, in conclusory fashion in his reply memorandum, that his failure to raise his ineffective assistance of counsel claims in the post-conviction proceeding should be excused because he "was never afforded the opportunity to have an amended port-conviction [sic] petition, as authorized by the Illinois Appellate Court in 2003, heard in the State courts."  In 2003, the state appellate court reversed the trial court's dismissal of petitioner's post-conviction petitions on the basis that the trial court had improperly taken its action without notice to the petitioner.  Wadley, No. 1-00-1462, at 9.  The appellate court remanded the case to the trial court for further proceedings, and indicated that upon remand, "the trial court should determine if defense counsel wishes to file an amended petition."  Id.  As noted above, the trial court has not issued a ruling on

remand.

Petitioner's argument is unpersuasive.  Petitioner filed two petitions for post-conviction relief in the state court, neither of which raised a claim of ineffective assistance of appellate counsel.  Although petitioner suggests that he would have properly raised all ineffective assistance of counsel claims in an amended petition on remand, he has offered no evidence that he made any effort to file an amended post-conviction petition following the remand, or that he was prevented from doing so.  Because petitioner did not raise the issue of ineffective assistance of appellate counsel in the state court, his ineffective assistance of appellate counsel claim is also procedurally defaulted.  Consequently, he cannot assert ineffective assistance of appellate counsel as cause for failing to raise a claim of ineffective assistance of trial counsel on direct appeal.

Moreover, as this Court has stated, petitioner has not shown that a miscarriage of justice occurred here, given the substantial evidence of his guilt.  The habeas petition is denied as to petitioner's seventh claim.

### I.        Claim VIII – Cumulative Error

In his eighth claim, petitioner contends that his trial was fundamentally unfair, based on the cumulative effect of multiple errors.  To establish a constitutional violation based on cumulative error, petitioner must establish that: (1) at least two errors were committed during his trial; and (2) considered together, along with the entire record, these errors "so infected the jury's deliberation that they denied the petitioner a fundamentally fair trial."  Alvarez v. Boyd, 225 F.3d 820, 824 (7th Cir. 2000).  The Court considers only plain errors or errors that have been preserved for review.  See id. at 825.

As discussed above, petitioner has raised only one claim of error that was meritorious and

not procedurally defaulted: the trial court's decision to allow the prosecution to present rebuttal testimony regarding petitioner's prior convictions. Since petitioner has not met his burden as to the first prong of the analysis, the petition is denied as to petitioner's eighth claim.

### J.    Evidentiary Hearing

Finally, petitioner urges the Court to hold an evidentiary hearing in this case. Putting aside the procedurally defaulted claims, the critical issue here is what took place at petitioner's trial. The Court previously granted the parties leave to depose Maloney, and directed them to contact the other trial participants, in an effort to reconstruct the trial proceedings. Maloney's deposition testimony, which has been presented to the Court, indicates that Maloney does not recall petitioner's trial. In addition, the parties agree that their other efforts to reconstruct the trial proceedings were unsuccessful. Since the parties have already presented to the Court all available evidence on the issue of what transpired at petitioner's trial, holding an evidentiary hearing would be fruitless. Petitioner's request for an evidentiary hearing is denied. See Boyko v. Parke, 259 F.3d 781, 790 (7th Cir. 2001) (recognizing that procedural devices, such as permitting discovery and expanding the record, "can be used to introduce new factual information into the record in lieu of an evidentiary hearing").

**ORDERED:**  The second amended petition for writ of habeas corpus [94] is denied.

ENTER:

*[signature: George W. Lindberg]*

George W. Lindberg
Senior U.S. District Judge

DATED:   October 24, 2008